1  **WO**

2

3

4

5

6                IN THE UNITED STATES DISTRICT COURT

7                   FOR THE DISTRICT OF ARIZONA

8

9  United States of America,          )   No. CV-06-3121-PHX-SRB
                                       )
10               Petitioner,           )   **ORDER AND**
                                       )   **REPORT AND RECOMMENDATION**
11  vs.                                )
                                       )
12                                     )
    Sue Taylor,                        )
13                                     )
                 Respondent.           )
14                                     )
                                       )
15

16         This matter is before the undersigned on referral from United States District

17  Judge Susan R. Bolton pursuant to 28 U.S.C. § 636(b).[1]

18         On January 19, 2007, the undersigned conducted a hearing regarding purging

19  a contempt order that had been issued against Respondent.  Shortly before the hearing, the

20  undersigned was informed that the Internal Revenue Service ("IRS") had made a referral to

    the United States Justice Department recommending the initiation of a grand jury

21  investigation of Respondent based on alleged violations of Title 26 and other tax-related

22  offenses.

23         In view of the foregoing, the undersigned issued an Order to Show Cause

24  directing the parties to submit briefing regarding whether Judge Bolton's November 28, 2006

25

26  _____

27  [1] This matter was originally assigned case number MC-06-63-PHX-SRB. This matter
    was subsequently reassigned civil case number 06-CV-3121-PHX-SRB (docket # 31).
28  Citations to "docket # ___" are to civil case number 06-CV-3121-PHX-SRB unless otherwise
    indicated.

1   Order enforcing the IRS summons and related orders holding Respondent in civil contempt

2   (dockets ## 11, 12, 17, and 19) should be vacated. (docket # 25)  The Government and

3   privately retained counsel[2] representing Respondent submitted briefing responsive to the

4   Court's Order to Show Cause.[3]  For the reasons set forth below, the undersigned recommends

5   that Judge Susan R. Bolton should not vacate her November 28, 2006 and related orders.

6                                   **BACKGROUND**

7              On May 25, 2006, the United States commenced an action pursuant to 26

8   U.S.C. §§ 7402(a) and 7604(a) to enforce an Internal Revenue Service ("IRS") summons

9   issued to Respondent, Sue Taylor ("Taylor").  (docket # 1)  The IRS summons was issued

10  to Taylor on December 7, 2004 ordering her to produce "books, records, papers, and other

11  data" relating to the collection of her tax liability for the tax periods ending December 31,

12  1997 and December 31, 1998. (docket # 1, Exh. 1)  Judge Bolton set a show cause hearing

13  for July 17, 2006.  (docket # 3)  When Taylor failed to appear on July 17, 2006 as ordered,

14  Judge Bolton issued an order enforcing the IRS summons and ordered Taylor to produce the

15  materials described in the IRS summons within 45 days of Judge Bolton's Order.  (dockets

16  ## 11,12) The July 18, 2006 Order[4] warned Taylor that noncompliance may result in a

17  finding of civil contempt.  (docket # 12)

18             Taylor's subsequent failure to comply with the Court's July 18, 2006 Order

19  prompted the United States to file a Motion to Show Cause for Contempt against Taylor on

20  October 5, 2006. (docket # 13)  Judge Bolton set a November 27, 2006 hearing for Taylor

21  _____

22        [2] On March 7, 2007, the undersigned granted attorney Marc J. Victor's Motion to
    Withdraw, filed on March 5, 2007, as Respondent's counsel. (docket # 57)  It is unknown if
23  Respondent has retained new counsel.

24        [3] The United States' Response to the Order to Show Cause appears at docket # 32 in
    MC-06-63-PHX-SRB.  Taylor's reply appears at docket  # 45 in CV-06-3121-PHX-SRB.
25  The Court will direct the Clerk of Court of docket the United States' Response in civil case,
26  CV-06-3121-PHX-SRB.

27        [4] This Order was signed on July 17, 2006 by Judge Bolton but was not entered on the
28  docket by the Clerk until the next day.

1    to show cause why she should not be held in contempt. (docket # 14)  When Taylor failed

2    to appear for the November 27, 2006 show cause hearing, Judge Bolton found her in civil

3    contempt of her July 18, 2006 Order and issued a bench warrant for Taylor's arrest.  (dockets

4    ## 16, 17)   A formal Order of Contempt was signed by Judge Bolton and entered on

5    November 28, 2006. (docket # 17)

6             Taylor was arrested on January 11, 2007 and appeared before the undersigned.

7    (docket # 22)  The undersigned ordered Taylor detained until she fully complies with Judge

8    Bolton's November 28, 2006 Order and produces the documents in accordance with the IRS

9    summons.  (docket # 22)   The undersigned set a January 19, 2007 status hearing regarding

10   Taylor's efforts, if any, to purge the contempt order.  (docket # 22)  Several hours before this

11   hearing, the United States filed a sealed document notifying the undersigned that on

12   December 5, 2006, the Department of Treasury referred a recommendation for the

13   prosecution of Taylor for violating 26 U.S.C. § 7212(a).  (docket # 24, sealed)  On January

14   9, 2007, the IRS made a referral to the United States Justice Department recommending the

15   initiation of a grand jury investigation of Taylor related to potential criminal violations of

16   Title 26 and other tax related offenses.  (Id.)  On January 17, 2007, a grand jury was

17   authorized to investigate matters covered in the two separate recommendations.  (Id.)

18             In view of the foregoing developments, the Court ordered the parties to brief

19   whether the undersigned should recommend that Judge Bolton vacate her November 28,

20   2006 Order and related Orders (dockets ## 11, 12, 17, and 19) based on the following

21   considerations: (1) whether, in light of the referral for grand jury investigation, Taylor's Fifth

22   Amendment privilege against self-incrimination precludes the Government from coercing

23   Taylor into disclosing the documentary evidence which is the subject of the November 28,

24   2006 Order of Contempt and the IRS Summons; and (2) whether Title 26 U.S.C. §

25   7602(d)(1), which provides that the United States may not initiate a summons enforcement

26   proceeding if a Justice Department referral is in effect, prohibits the Government from

27   enforcing the subject summons after the Justice Department recommends the initiation of a

28   grand jury investigation of Taylor.  (docket # 25, sealed)   Recognizing that these issues

1   could hinder Taylor's ability to comply with Judge Bolton's November 28, 2006 and related

2   orders, on January 19, 2007, the undersigned ordered Taylor released on conditions after the

3   posting of a $100,000.00 cash appearance bond with the Clerk.  (dockets # 30-34)  The

4   parties have now submitted briefing regarding the Fifth Amendment and § 7602 enforcement

5   issues.

6                                                    **ANALYSIS**

7   **I. Fifth Amendment Privilege**

8                          **A.  The IRS Summons**

9                    The Court will first consider whether complying with the IRS summons would

10  violate Taylor's Fifth Amendment privilege against self-incrimination.   The IRS summons

11  requests  that Taylor produce:

> All documents in your possession and control reflecting the assets and
> liabilities of the above named taxpayer(s) including, but not limited to, the
> following: all bank statements, checkbooks, canceled checks, savings account
> passbooks, and records of certificates of deposits for January 1, 2003 to the
> date of full compliance with this summons, regarding accounts or assets held
> in the name of the taxpayer(s) or held for the benefit of the taxpayer(s); all
> records or documents regarding stocks and bonds, deeds or contracts regarding
> real property current registration certificates for motor vehicles, and life or
> health insurance policies currently in force, any of which items are owned,
> wholly or partially, by the taxpayer(s), or in which the taxpayer(s) have a
> security interest, or held for the benefit of either or both of the taxpayer(s), so
> that a current Collection Information Statement may be prepared.  A blank
> copy of such Collection Information Statement is attached hereto to guide you
> in the production of the necessary documents and records.

(docket # 1, Exh. 1)  The Order Enforcing Summons orders Taylor to "produce the

documents and testimony specified in the Summons."  (docket # 12)     Although the

undersigned did not limit the scope of the briefing in this matter, the parties limited their

briefing to an account with Global Bank of Commerce Limited in Antigua ("Global Bank")

and the Visa payment cards issued by Global Bank.  (docket # 32, MC-06-063-PHX-SRB;

docket # 45, CV-06-3121-PHX-SRB)  It appears that the Government may have limited the

scope of the previously-issued summons.  (docket # 45 at 5)  Accordingly, the Fifth

Amendment analysis applies only to the Global Bank records and the undersigned makes no

determination and recommendation regarding whether the Fifth Amendment applies to

Taylor's production of other materials.  The Court notes, however, that Taylor cannot rely on a blanket assertion of her Fifth Amendment privilege to defeat an IRS summons.  *United States v. Roundtree*, 420 F.2d 845, 852 (5th Cir. 1970).

### B.  The Fifth Amendment and Compelled Document Production

The Fifth Amendment provides that "[n]o person . . . shall be compelled in any criminal case to be a witness against himself."  U.S. Constitution, Amend. V.  The Fifth Amendment protects a person from "compelled . . .testimonial communication that is incriminating."  *Fisher v. United States*, 425 U.S. 391, 408 (1976).  Although the Fifth Amendment expressly provides for protection from criminal prosecution based on one's own testimony, "[i]t can be asserted in any proceeding, civil or criminal . . . and it protects against any disclosure that the witness reasonably believes could be used in a criminal prosecution or could lead to other evidence that might be so used."  *Kastigar v. United States*, 406 U.S. 441, 444-45 (1972).

When records are voluntarily produced, compulsion is not present and the contents of those records are not protected by the Fifth Amendment.  *United States v. Doe*, 465 U.S. 605, 610 (1984).  In this case, Taylor does not claim that the contents of the materials which the IRS requests are protected by the Fifth Amendment.  Rather, she asserts that the Fifth Amendment privilege applies to the act of producing the documents.  (docket # 45) Taylor correctly states under the "act-of-production" doctrine, an individual's "production of documents in response to a [summons] may have incriminating testimonial aspects."  *United States v. Hubbell*, 530 U.S. 27, 36 (2000)(*Hubbell II*); *Fisher*, 425 U.S. at 410.   The *Fisher* Court explained that in some cases compliance with a summons may "tacitly concede the existence of the papers demanded and their possession or control by the taxpayer.  It also would indicate the taxpayer's belief that the papers are those described" in the summons.  *Fisher*, 425 U.S. at 411(citing *Curcio v. United States*, 354 U.S. 118, 125 (1957)). The Court further explained that when an individual produces documents responsive to a summons or subpoena, the element of compulsion is present.  *Id.* at 410.  The more difficult issue, however, is whether the individual's "tacit averments" are "both 'testimonial'

and 'incriminating' for purposes of applying the Fifth Amendment." *Fisher*, 425 U.S. at 410.

The *Fisher* Court clarified that there is no Fifth Amendment protection, however, where "[t]he existence and location of the papers are a foregone conclusion and the taxpayer adds little or nothing to the sum total of the Government's information by conceding that he in fact has the papers." *Fisher*, 425 U.S. at 411. As explained in *Fisher*, "[u]nder these circumstances . . . 'the question is not of testimony but of surrender.'" *Fisher*, 425 U.S. at 411(quoting *In re Harris,* 221 U.S. 274, 279 (1911)).

The *Fisher* Court rejected a Fifth Amendment challenge to IRS summonses which sought production of accountants' documents in the possession of the taxpayer's attorneys. The Court noted that the summonses did not seek oral testimony, and that the "accountants' workpapers are not the taxpayer's. They were not prepared by the taxpayer, and they contain no testimonial declarations by him." *Fisher*, 425 U.S. at 409. The Court concluded that the taxpayer had no Fifth Amendment privilege with respect to the contents of the documents at issue. *Id.* See also, *Hubbell II*, 530 U.S. at 35-36 (noting the "settled proposition that a person may be required to produce specific documents even though they contain incriminating assertions of fact or belief because the creation of those documents was not 'compelled' within the meaning of the privilege.")

More significantly, the *Fisher* Court found that the act of producing the documents did not implicate the Fifth Amendment because the existence and location of the documents was a foregone conclusion. *Fisher*, 425 U.S. at 411. The Court noted that papers belonged to the accountant, were prepared by him, and were of the kind usually prepared by an accountant. *Id.* The Government, therefore, was not relying on the "truth-telling" of the taxpayer to prove the existence of the documents. *Id.*

Taylor argues that the foregone conclusion doctrine does not apply in this case because she has never admitted to possessing or controlling the Visa payment cards. Taylor claims that the act of producing the Global Bank records would amount to an admission of the existence of the records and her possession thereof, and would also authenticate the records. This argument lacks merit.

1    In this case, the IRS gathered information regarding Taylor pursuant to its

2  Offshore Credit Card Project ("OCCP").  (Declaration of Revenue Officer Jerry Carter

3  ["Carter Decl"] at ¶ 3, docket # 33 in *United States v. Taylor*, MC-06-63-PHX-SRB)  The

4  IRS claims that it has determined that Taylor has maintained and used a Visa payment card,

5  number 4551-35**-****-****, issued by Global Bank of Commerce Limited ("Global

6  Bank") in Antigua.  (Carter Decl. at ¶ 3)  The United States explains that the OCCP is an

7  ongoing program to identify individuals who hide taxable income by transferring revenue to

8  offshore jurisdictions and then use payment cards, such as credit, debit, or charge cards, to

9  access those funds in the United States.  The United States further explains that an offshore

10  scheme usually works in the following manner: (1) the United States taxpayer locates an

11  offshore professional to assist in the development of an offshore plan.  This plan usually

12  involves creating an entity or entities in a financial secrecy jurisdiction.  For example, the

13  offshore professional helps create an International Business Corporation ("IBC") or a trust

14  in the financial secrecy jurisdiction. (2) Once the offshore entity is created, a method is

15  devised to transfer funds or assets to the IBC or trust.  These funds or assets may represent

16  profits or income the taxpayer seeks to hide from the IRS. (3) Finally, techniques are

17  developed to access the funds in the United States.  Payment cards are a common method of

18  accessing offshore funds.  (Carter Decl. ¶ 4)

19    Here, the IRS has information that Taylor opened an account with Global Bank

20  in 1996.  (Carter Decl. ¶ 8)  Two Visa payment cards have been issued on the account, the

21  first is in the name of Property Resources Int. Inc., and the second card is in the name of Sue

22  Taylor.  (Carter Decl. ¶ 7)  Both cards list 20 N. Gilbert # A, Gilbert, Arizona 85234 as their

23  address.  This Gilbert property belonged to Taylor until the IRS seized and sold it in June of

24  2006.  (Carter Decl. ¶ 7)  The OCCP records also reflect that the Global Bank Visa payment

25  cards have a credit line of, at least, $16,000.00 and have been used at numerous retail stores,

26  and restaurants to pay for services.  (Carter Decl. ¶ 8)  The OCCP records also indicate that

27  Taylor has a separate Deposit Account with Global Bank.  (Carter Decl. ¶ 9)

28    The United States contends that the IRS summons at issue encompasses

1  documents related to Taylor's Global Bank account.  The United States further argues that

2  Taylor cannot assert a Fifth Amendment privilege with respect to the Global Bank's records

3  because their existence is a foregone conclusion.  Taylor, on the other hand, claims that the

4  Fifth Amendment applies because she has not admitted possession or control of the Global

5  Bank account and related records.

6  In *United States v. Norwood*, 420 F.3d 888 (8th Cir. 2005), the IRS petitioned

7  for the enforcement of a summons which requested that taxpayer produce, in pertinent part,

8  bank records.  The taxpayer refused to produce the requested documents invoking his Fifth

9  Amendment privilege against self-incrimination.  *Norwood*, 420 F.3d at 890.  The Eighth

10  Circuit affirmed the district court's rejection of taxpayer's Fifth Amendment claim and

11  enforced the summons.  The *Norwood* court found that because the IRS already knew of the

12  existence of the two payment cards and the corresponding accounts, the existence of related

13  documents – account applications, periodic account statements, and charge receipts – was

14  a foregone conclusion.  *Id.* at 895.  "The production of documents the existence of which is

15  a foregone conclusion is not testimony for purposes of the Fifth Amendment."  *Id.*(citing

16  *Fisher*, 425 U.S. at 411).  Accordingly, taxpayer's production of the bank records would add

17  "little or nothing" to the government's information."  *Id.*

18  This case is similar to *Norwood*, 420 F.3d 888.  Here, the IRS has determined,

19  based on information that it had gathered from the OCCP, that Taylor had an offshore credit

20  card account issued by Global Bank, the payment card numbers, and that she maintained and

21  used that card.  (Carter Decl. ¶¶ 7-8); *Norwood*, 420 F.3d at 896.  Based on this information,

22  as the court held in *Norwood*, it is a foregone conclusion that Taylor had an offshore-based

23  credit card account and, at least, one other foreign account (i.e., the account that held the

24  funds or assets that were accessed by the offshore credit card).  *Norwood*, 420 F.3d at 895-

25  96.

26  Banks routinely send monthly statements to their customers, compile account

27  records, and produce account statements. *Kaggen v. IRS*, 71 F.3d 1018, 1020 (2nd Cir. 1995)

28  ("That banks send customers monthly statements which inform customers to whom their

money was paid and in what amounts is not reasonably subject to dispute . . . .Moreover, those facts are generally known . . . ."); *United States v. Norwood*, No. A3-03-29, 2004 WL 1535579, * 2 (D.ND. March 31,2004) (stating that "the bank documents sought in paragraph 3 [of the IRS summons] are commonly assumed to exist in the presence of banking transactions.  IRS has proof of the offshore credit cards[;] it is not a reach to assume that statements, cancelled checks and deposit slips supporting those cards exist.")  In view of the IRS's information regarding the Global Bank account and related payment cards, it is also a foregone conclusion that account applications, monthly statements, charge receipts, and other similar documents would exist for those accounts, as they are the type of documents possessed by financial account owners "as a matter of course."  *Norwood*, 420 F.3d at 895.  Moreover, as the cardholder and owner of the accounts, it is a foregone conclusion that Taylor would have possession or control of these materials.  *United States v. Wheaton*, 791 F.Supp. 103 (D.N.J. 1992) (control of offshore account is an adequate basis to infer ability to produce records for that account.)  Because the existence of the records sought in the summonses relating to Taylor's offshore credit card issued by Global Bank is a foregone conclusion, the Fifth Amendment does not support Taylor's refusal to produce records related to the Global Bank account.

Additionally, contrary to Taylor's assertion, her act of production would not authenticate the Global Bank records.  Taxpayer "would be no more competent to authenticate [the Global Bank] records by producing them than [s]he would be to authenticate them if testifying orally."  *Fisher*, 425 U.S. at 413.  Taylor "did not prepare the papers and could not vouch for their accuracy."  *Id.*  Only Global Bank or its employees could authenticate the Global Bank records.  *United States v. Clark*, 847 F.2d 1467, 1473 (10th Cir. 1988).

Thus, because the "Government is in no way relying on the 'truth-telling' of the taxpayer to prove the existence of or [her] access to the documents," or their authenticity, no "'constitutional rights are touched. The question is not of testimony but of surrender.'" *Fisher*, 425 U.S. at 411(quoting *In re Harris*, 221 U.S. 274, 279 (1911).  Based on the foregoing,

1   Taylor's production of the Global Bank records - the existence of which is a forgone

2   conclusion  - is not testimonial and does not implicate her Fifth Amendment rights.

3            Moreover, the foregone conclusion rule does not require the IRS "to have

4   actual knowledge of the existence and location of each and every responsive document . . .

5   ."  *In re Grand Jury Subpoena Dated April 18, 2003*, 383 F.3d 905, 910 (9th Cir. 2004).

6   Rather, it is sufficient for the Government "to establish the existence of the documents sought

7   and [the respondent's] possession of them with 'reasonable particularity.'" *Id.* (quoting *United*

8   *States v. Hubbell*, 167 F.3d 552, 579 (D.C.Cir. 1999) (*Hubbell I*), *aff'd.*, 530 U.S. 27 (2000)

9   and *In re Grand Jury Subpoena Duces Tecum Dated Oct. 29, 1992,* 1 F.3d 87, 93 (2nd Cir.

10  1993)).  Because the record in this case reflects that the Government knows with more than

11  "reasonable particularity" that records for the Global Bank account exist and that Taylor has

12  control over and access to those accounts, Taylor's production of those records would not be

13  testimonial.

14           In summary, Taylor cannot lawfully refuse to produce the records related to

15  the Global Bank account and payment cards which are requested in the IRS summons on

16  Fifth Amendment grounds because the existence of the records relating to Taylor's offshore

17  account with Global Bank and the Visa payment card issued on that account is a foregone

18  conclusion.  Thus, the production of the documents is not testimonial in nature for purposes

19  of the Fifth Amendment.  *Fisher*, 425 U.S. at 411.

20  **II.  Referral to Department of Justice**

21           Also at issue is whether enforcement of the IRS summons may lawfully

22  continue in view of the subsequent referral of this matter to the Department of Justice.

23           Congress has granted the IRS "expansive information-gathering authority" to

24  investigate "all persons who may be liable to pay any internal revenue tax."  *United States*

25  *v. Arthur Young & Co.*, 465 U.S. 805, 814 (1984) (citing 26 U.S.C. § 7601).  To that end,

26  26 U.S.C. § 7602 authorizes the IRS to issue summonses for the purpose of "determining the

27  liability of any person for any internal revenue tax."  *Id.* at 813-15; 26 U.S.C. § 7602(a)(2).

28  This statutory scheme authorizes the IRS to use summonses to compel the production of

1    "books, papers, records, or other data." 26 U.S.C. § 7602(a)(2); *Speck v. United States*, 59

2    F.3d 106, 108 (9th Cir. 1995). This language "reflects Congress' express intention to allow

3    the IRS to obtain items of even potential relevance to any ongoing investigation, without

4    reference to its admissibility [in federal court]." *Arthur Young & Co.*, 465 U.S. at 814.

5            When an individual fails to comply with an IRS summons, the IRS may file a

6    petition to enforce the summons in federal court.  To obtain enforcement of a summons, the

7    IRS need only demonstrate that the summons: (1) was issued for a legitimate purpose; (2)

8    seeks information relevant to that purpose; (3) seeks information that is not already within

9    the Commissioner's possession; and (4) satisfies all administrative steps required by the

10   United States Code. *United States v. Powell*, 379 U.S. 48, 57-58 (1964); *Lidas, Inc. v.*

11   *United States*, 283 F.3d 1076, 1082 (9th Cir. 2001). "To establish the need for judicial

12   enforcement, this showing need only be minimal . . . . "'[T]he statute must be read broadly

13   in order to ensure that the enforcement powers of the IRS are not unduly restricted.'" *United*

14   *States v. Jose*, 131 F.3d 1325, 1327 (9th Cir. 1997)(en banc) (quoting *Liberty Fin. Servs. v.*

15   *United States*, 778 F.2d 1390, 1392 (9th Cir. 1985)).

16           The Government must also show that no Justice Department referral is in effect

17   with respect to such person. 26 U.S.C. § 7602(d).  Section 7602(d)(1) provides that "[n]o

18   summons may be issued . . . and the Secretary may not *begin* any action under section 7604

19   to enforce any summons, with respect to any person if a Justice Department referral is in

20   effect with respect to such person."  *Id.* (emphasis added).  Thus, the IRS's summoning

21   authority ends when the IRS refers a criminal investigation of the Department of Justice.  26

22   U.S.C. § 7602(d)(1). The statute plainly states that the validity of the summons is determined

23   as of the date the enforcement petition is filed.

24           Taylor argues that Congress' intent in enacting § 7602(d)(1) was to prevent IRS

25   from using its summons power in any manner after a Justice Department referral. Courts

26   apply the rules of statutory construction to determine Congress' intent in enacting a particular

27   statute.  The court first looks to the plain language of the statute.  "The plain meaning of the

28   statute controls, and courts will look no further, unless its application leads to unreasonable

1   or impracticable results. If the statute is ambiguous - and only then - courts may look to its

2   legislative history for evidence of congressional intent." *United States v. Daas*, 198 F.3d

3   1167, 1174 (9th Cir. 1999)(citations omitted).

4          The undersigned finds that the plain language of § 7602 only restricts the time

5   when the IRS may issue a summons and "begin" an enforcement action.  Specifically, the

6   IRS must issue a summons or begin an enforcement action before a Justice Department

7   referral.  28 U.S.C. § 7602.  On its face, § 7602 does not limit the continued execution of a

8   summons that was issued and enforced before a Justice Department referral.  28 U.S.C. §

9   7602.

10          This interpretation of § 7602 is supported by *Drum v. United States*, 602

11   F.Supp. 834 (M.D.Pa. 1985) where the district court considered whether the United States

12   could continue to execute IRS summonses following a Justice Department referral where the

13   summonses were validly issued and enforced prior to the referral.  *Id.* at 834.  Relying on the

14   plain language of § 7602(d)(1), the district court concluded that because the summonses were

15   issued prior to any Justice Department referral, the summonses were properly issued and

16   enforcement could proceed.  Id. at 835-37.  *See also*, *Garpeg, Ltd. v. United States*, 583

17   F.Supp. 799, 802 (S.D.N.Y. 1984) (stating that "[i]t is well settled . . . that the validity of an

18   IRS summons is tested as of the date of issuance. (citations omitted))."  The district court in

19   *Drum* stated that "the language of Section 7602 is unambiguous. The statute prohibits the

20   issuance or commencement of an action to enforce a summons after a Justice Department

21   referral but it does not prevent continued execution of a validly issued and enforced

22   summons." *Drum*, 602 F.Supp. at 836.

23          The undersigned agrees with *Drum* that the language of § 7602 is

24   unambiguous. The statute prevents issuance of or commencement of an action to enforce a

25   summons after a Justice Department referral but it does not prevent continued execution of

26   a validly enforced summons. *Drum*, 602 F.Supp. at 837.  If the statute is to be amended to

27   preclude the continuation of the Government's enforcement of a summons after such a

28   referral, it is solely within the province of Congress to do so, not the courts.

1    In this case, the IRS issued the summons at issue on December 7, 2004.  On
2  May 25, 2006, the IRS commenced this action to enforce that summons.  On July 17, 2006,
3  Judge Bolton issued an order enforcing the summons.  Thereafter, on November 27, 2006
4  Judge Bolton held Taylor in contempt of its July 17, 2006 Order.  Months later, on January
5  9, 2007, the IRS referred the investigation of Taylor's case to the Justice Department. 26
6  U.S.C. § 7602(d)(2)(stating that a Justice Department referral is in effect when the IRS
7  "recommend[s] to the Attorney General a grand jury investigation of, or the criminal
8  prosecution of, such person . . . .")   Under the plain language of § 7602(d)(1), because no
9  referral was in place when the summons was issued or when enforcement of the IRS
10  summons was sought and ordered by Judge Bolton, the subsequent referral to the Justice
11  Department does not preclude continued execution of the IRS summons.[5]  *Garpeg*, 583
12  F.Supp. at 802.

13                              **CONCLUSION**

14    In accordance with the foregoing, the undersigned finds that the July 17, 2006
15  and related Orders (dockets # 11, # 12, # 17, # 19) should not be vacated.  Rather, the
16  enforcement of the IRS summons may continue in accordance with those orders.

17    Accordingly,

18    **IT IS ORDERED** that in accordance with the Court's January 23, 2007 and
19  February 28, 2007 Orders (dockets ## 31 and 47, respectively), the Clerk of Court shall
20  modify the docket in CV-06-3121-PHX-SRB to reflect all of the docket entries in MC-06-63-
21  PHX-SRB[6].

22

23    [5] Consistent with *Drum*, in *United States v. Boulware*, 203 Fed.Appx. 179, 172, 2006
24  WL 2986451 (9th Cir., October 19, 2006)(not published in the Federal Reporter), the court
   explained that the argument that a subsequent Justice Department referral prohibits the
25  enforcement of a prior IRS summons "fails because no Department of Justice referral was
   in effect . . . when the summons was issued . . . ."
26

27    [6] Although the civil case, CV-06-3121-PHX-SRB, includes most of the documents
28  filed in its predecessor case, MC-06-63-PHX-SRB, some documents - including the
   Government's Response to the Order to Show Cause and the Declaration of Jerry Carter - still

1    In light of Taylor's supervision by Pretrial Services, the posting of a significant
2    cash bond and other conditions,

3    **IT IS ORDERED** that the Government's Request to Reexamine Defendant's
4    Release Conditions (docket # 55), filed on March  is **DENIED**.

5    **IT IS RECOMMENDED** that Judge Bolton's November 28, 2006 and related
6    Orders (dockets # 11, # 12, # 17, # 19) not be vacated.

7    **IT IS FURTHER RECOMMENDED** that Respondent, Sue Taylor, be
8    ordered to appear on a date and time in the near future and a place certain to either produce
9    all the documents requested in the subject IRS summons or that she self-surrender to the
10   United States Marshal Service on the second floor of the Sandra Day O'Connor U.S.
11   Courthouse for indefinite incarceration until she purges her civil contempt by compliance
12   with Judge Bolton's November 28, 2006 Order. (docket # 17)

13   This recommendation is not an order that is immediately appealable to the
14   Ninth Circuit Court of Appeals.  Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules
15   of Appellate Procedure, should not be filed until entry of the District Court's judgment.  The
16   parties shall have ten days from the date of service of a copy of this recommendation within
17   which to file specific written objections with the Court.  *See,* 28 U.S.C. § 636(b)(1); Rules
18   72, 6(a), 6(e), Federal Rules of Civil Procedure.  Thereafter, the parties have ten days within
19   which to file a response to the objections.  Failure timely to file objections to the Magistrate
20   Judge's Report and Recommendation may result in the acceptance of the Report and
21   Recommendation by the District Court without further review. *See United States v. Reyna-*
22   *Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003).

23   / / /
24   / / /
25   / / /
26
27   _____
28   appear only in MC-06-63-PHX-SRB.

1    Failure timely to file objections to any factual determinations of the Magistrate Judge

2  will be considered a waiver of a party's right to appellate review of the findings of fact in an

3  order or judgment entered pursuant to the Magistrate Judge's recommendation. *See*, Rule 72,

4  Federal Rules of Civil Procedure.

5    DATED this 13th day of March, 2007.

6

7

8                                    Lawrence O. Anderson
                                     United States Magistrate Judge
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28